No. 21-1015, *David Andrew Levine v. Rockwool International A/S, et al.*

**FILED**

**June 14, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Armstead, Justice, dissenting:

This case was settled by the parties in 2021, and the circuit court properly enforced the parties' settlement in its November 19, 2021 order.

The terms of the agreement between the parties were memorialized in an email from counsel for the Jefferson County Prosperity Respondents (Jefferson County Prosperity, Inc., Daniel Casto, Raymond Bruning, and Steven Stolipher) to counsel for Petitioner.[1]  The email reads as follows:

> I received word this morning that your client, David Levine, has authorized you to enter into a global settlement with Jefferson County Perspective, Dan Casto, Mark Everhart, Raymond Bruning, and Steven Stolipher.  It is my understanding that the terms of the agreement are that David Levine will drop and dismiss with prejudice all claims set forth in 19-C-139 and 20-C-129 and Mr. Casto and Mr. Everhart will drop all claims they have pending against Mr. Levine, including claims in which this office does not represent Mr. Casto.  The terms of the settlement will include mutual non-disparagement and confidentially [sic] of the terms of the settlement to the extent allowed by WV law.  Further, there will be no exchange of any money as a result of this settlement.  All parties will execute a release.
>
> Please confirm that these terms are correct and confirm that your client agrees to these terms.  If there is anything missing, please let me know.

---

[1] The email was sent on August 31, 2021 at 12:04 p.m.

1

Counsel for Petitioner responded twenty-four minutes later with: "[y]ou are correct at [sic] to the terms of the agreement." In an email dated September 9, 2021, counsel for the Jefferson County Prosperity Respondents sought to confirm that the settlement included the Rockwool Respondents (Rockwool International A/S, Bjorn Rici Andersen and Roxul USA, Inc.). By email correspondence dated September 13, 2021, counsel for Petitioner confirmed that "the settlement would include the Rockwool Defendants."

Following these email exchanges, Respondents unsuccessfully attempted to "secure a signed release and executed stipulation of dismissal." It was not until October 2021, that counsel for Petitioner informed counsel for the Jefferson County Prosperity Respondents that Petitioner had seen some old Facebook posts, and now he could not get Petitioner to sign a release.

Respondents filed a motion to enforce the settlement that had previously been agreed to by the parties. Petitioner opposed the motion and argued that any agreement was predicated on the parties later reducing the agreed terms to writing and that there was not a meeting of the minds. The circuit court rejected these arguments and concluded that the parties "agreed to all material terms of the agreement and that the parties formed a contract to settle all claims." Before this Court, Petitioner argues that the circuit court erred in finding mutual assent and a meeting of the minds and in finding an enforceable settlement agreement.

I am not persuaded by Petitioners' arguments, and I am concerned that the majority's holding may give hope to litigants who wish to back out of enforceable settlements. Further, I disagree with the majority's holding that an evidentiary hearing is needed to determine whether a settlement agreement exists in this case.

I begin my analysis with the real reason that Petitioner refused to move forward with the settlement in this case – a Facebook page. The first reason that Petitioner gives for not moving forward with the settlement in this case is "the reactivation of a Facebook page."[2] Before the circuit court, Petitioner argued that following the reactivation of the Facebook page, defamatory statements against him began to "recirculate in Facebook feeds."[3] Petitioner alleged that "some or all" of the Respondents were responsible for original posts on this Facebook page and the reactivation of the Facebook page, but he offered nothing to support this allegation. Petitioner's displeasure with the reactivation of the Facebook page does not mean that a meeting of the minds never existed.

The circuit court certainly had the authority to enforce the settlement agreement in this case. *Horculick v. Galloway*, 222 W. Va. 450, 459, 665 S.E.2d 284, 293 (2008) (noting that "[t]his Court has consistently held that a circuit court has the authority

---

[2] I acknowledge that Petitioner advances several reasons in support of his decision not to move forward with the settlement in this case, but his first reason is the reactivation of the Facebook page. "As a result of the reactivation of the Facebook page, the lack of certain important terms to the Petitioner and the unilateral insertion of material terms in the Written Settlement Agreement, the Petitioner did not move forward with Settlement." Petitioner's Brief at p. 6.

[3] Plaintiff David A. Levine's Combined Response and Memorandum in Opposition to the Defendants' Joint Motion to Enforce Settlement Agreement at ¶ 24.

3

to enforce a settlement agreement through a party's motion to compel enforcement"). Further, as the majority notes, this Court has "recognized that a settlement agreement can be reached via communications between counsel, even when a party does not sign a written settlement agreement." *See Donahue v. Mammoth Restoration & Cleaning*, 246 W. Va. 398, 874 S.E.2d 1 (2022). Despite Petitioner's attempt to distinguish this Court's decision in *Donahue*, I believe that Respondents' reliance upon *Donahue* is proper and supports the circuit court's decision to enforce the settlement.

In *Donahue*: (1) an email was circulated memorializing the terms of the settlement between the parties; (2) the email requested the petitioner in that case to confirm the agreement; and (3) counsel for the petitioner responded and confirmed the terms of the agreement. *Id*. Accordingly, this Court rejected the *Donahue* petitioner's argument that the evidence failed to establish a meeting of the minds and concluded that the petitioner's assent to the terms of the agreement had been "unequivocal." *Id*. at 405, 874 S.E.2d at 8.

In the instant case, the email circulated by counsel for the Jefferson County Prosperity Respondents memorialized the terms of the agreement and asked for confirmation of the agreement. The response from Petitioner's counsel confirmed the terms of the agreement. Now, Petitioner argues that when his counsel typed the sentence: "[y]ou are correct at [sic] to the terms of the agreement" that he really meant that "the terms to be included in the future written settlement agreement were correct." However, those words were _not_ used, and I do not see any reason that they should now be added.

4

Petitioner's reliance upon emails discussing a written agreement is misplaced as there is insufficient indication that the settlement was predicated upon the execution of a future written settlement agreement. Further, the order of the circuit court does not require Petitioner to execute a written settlement agreement.

For these reasons, I believe the circuit court was correct in enforcing the settlement agreement reached by the parties and would affirm the circuit court's order. Accordingly, I respectfully dissent as to the majority's decision to reverse the circuit court's order dated November 19, 2021, and to remand this case for further proceedings.